James D. Weinberger (jweinberger@fzlz.com)
Felicity Kohn (fkohn@fzlz.com)
FROSS ZELNICK LEHRMAN & ZISSU, P.C.
866 United Nations Plaza
New York, New York 10017
Tel:  (212) 813-5900
Fax:  (212) 813-5901

*Counsel for Plaintiff Brookfield Office Properties Inc.*

**UNITED STATES DISTRICT COURT FOR THE
SOUTHERN DISTRICT OF NEW YORK**

BROOKFIELD OFFICE PROPERTIES INC.,

*Plaintiff*,

v.

MANHATTAN WEST HOTEL, CYMO
TRADING CORP. and JD HOTEL
MANAGEMENT INC.,

*Defendants*.

## COMPLAINT

Plaintiff Brookfield Office Properties Inc. ("Brookfield" or "Plaintiff"), by its

undersigned attorneys, for its Complaint against Defendants Manhattan West Hotel, CYMO

Trading Corp. and Jd Hotel Management Inc. (collectively, "Defendants," and each,

individually, "Defendant"), alleges as follows:

## NATURE OF THE ACTION

1.      Plaintiff is a global commercial and residential property company that owns,

manages, and develops premier assets in the world's major markets, including New York,

Washington, D.C., Los Angeles, London and Sydney.  For the past several years, Plaintiff has

been in the process of developing a seven-million square foot superblock in the burgeoning

Hudson Yards District marketed and advertised under the proprietary name and trademark MANHATTAN WEST, along with a stylized MW logo.  In addition to Manhattan West's commercial office, residential, and retail developments, Brookfield has plans underway to build a hotel in its Manhattan West complex.  Despite the renown of the MANHATTAN WEST name and despite having actual and constructive knowledge of Brookfield's rights in the MANHATTAN WEST and MW trademarks, Defendants have, without authorization or permission from Brookfield, adopted and continued to use the trade name MANHATTAN WEST HOTEL in connection with a hotel located two city blocks from the Manhattan West development.  Such use of the MANHATTAN WEST mark impermissibly creates an association between Brookfield and Defendants in the minds of consumers.  As a result, to protect the goodwill that it has established in the MANHATTAN WEST and MW marks, Plaintiff brings this action for trademark infringement under Section 32(1) of the Lanham Act, 15 U.S.C. § 1114(1); unfair competition under Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a); trademark dilution under Section 360-*l* of the New York General Business Law; and trademark infringement and unfair competition under the common law of New York.  As described below, Plaintiff seeks injunctive relief, an accounting of Defendants' profits flowing from their use of the infringing mark, damages, attorneys' fees, and such other relief as the Court deems just and proper.

## THE PARTIES

2.      Brookfield is a corporation duly organized and existing under the laws of the Canada, with New York offices at 250 Vesey Street, 15th Floor, New York, New York 10281.

3.      Upon information and belief, Defendant Manhattan West Hotel is located at 303 West 30th Street, New York, New York 10001.

4.      Upon information and belief, Defendant CYMO Trading Corp. is a New York corporation affiliated with the operation of the Manhattan West Hotel, with offices at 47 Eisenhower Drive, Cresskill, New Jersey 07626.

5.      Upon information and belief, Defendant Jd Hotel Management Inc. is a corporation affiliated with the operation of the Manhattan West Hotel with offices at 403 8th Avenue, New York, New York 10001.

## JURISDICTION & VENUE

6.      This Court has jurisdiction over the subject matter of this action pursuant to Section 39 of the Lanham Act, 15 U.S.C. § 1121, and under Sections 1331, 1338(a) and 1338(b) of the Judicial Code, 28 U.S.C. §§ 1331, 1338(a) and 1338(b).  The Court has supplemental jurisdiction over the state law claims under Section 1367(a) of the Judicial Code, 28 U.S.C. § 1367(a).

7.      This Court has personal jurisdiction over Defendants under Sections 301 and/or 302 of the New York Civil Practice Laws and Rules because, upon information and belief, (i) Defendants continuously and systematically conduct, transact and solicit business in the State of New York, (ii) Defendants have committed and are committing tortious acts within this State by marketing, promoting, advertising and offering for sale their hotel services under the infringing name Manhattan West Hotel within the State of New York and (iii) the events giving rise to this Complaint occurred in the State of New York and/or had effects in this State.

8.      Venue is proper in this district pursuant to Sections 1391(b) and (c) of the Judicial Code, 28 U.S.C. §§ 1391(b) and (c) of the Judicial Code, 28 U.S.C. § 1391(b) and (c), in that a substantial part of the events giving rise to the claim, including, but not limited to, Defendants' marketing, promoting, advertising, and offering for sale of hotel services in violation of

Brookfield's exclusive rights in the MANHATTAN WEST and MW marks occurred in this District, Brookfield is suffering harm in this District, and Defendants are all subject to personal jurisdiction in this District.

**FACTS COMMON TO ALL CLAIMS FOR RELIEF**

A.     **Brookfield and the MANHATTAN WEST and MW Marks**

9.     Brookfield is one of the preeminent commercial and residential property companies in the United States and throughout the world.  Its properties have defined the skylines in numerous financial and political capitals of the world, including New York, Washington, D.C., and London.  Brookfield is currently engaged in the widely publicized development of a superblock in the quickly expanding Hudson Yards District near 30th Street between Ninth and Tenth Avenues in New York City.  The property is slated to include office towers, a residential tower, retail space, and a hotel.  Brookfield has named its property Manhattan West, and has invested substantial resources in publicizing its name as well as its trademarks MANHATTAN WEST and MW, including through its website, *www.manhattanwestnyc.com*.

10.     There has been extensive media coverage of the development of the Manhattan West property in national publications such as the *New York Times*, CNBC, and the *Wall Street Journal*, examples of which are attached as **Exhibit A**.

11.     As a result of Brookfield's prominent display and promotion of its marks over a number of years as well as its substantial investment in promoting the Manhattan West development, the MANHATTAN WEST and MW marks have acquired substantial value. Moreover, they distinguish Brookfield exclusively and uniquely as the source of services available under or bearing the MANHATTAN WEST or MW marks.

12.     In addition to the rights built up through its extensive use of the MANHATTAN

WEST and MW marks, Brookfield is the owner of U.S. Trademark Reg. No. 4,706,150 for

MANHATTAN WEST and Reg. No. 4,669,491 for MW, in stylized form, both based on first

use on January 31, 2012, for the following services:

> "Property management services; real estate management services; real estate leasing
> services for commercial, retail and residential properties; real estate brokerage services;
> real estate investment; real estate management and real estate investment in the field of
> residential, commercial and retail real estate" in International Class 36; and

> "Real estate development services; building construction services; construction planning;
> building maintenance and repair; custom construction and building renovation; real estate
> development and building construction in the field of residential, commercial and retail
> real estate; construction consultation services" in International Class 37.

The above-listed registrations are valid, subsisting, in full force and effect and constitute prima

facie evidence of the validity of the mark and of Brookfield's ownership and exclusive right to

use the marks in connection with the identified services pursuant to § 7(b) of the Lanham Act, 15

U.S.C. § 1057(b).  Attached hereto as **Exhibit B** are true and correct copies of the above-listed

registrations.  As a matter of law, these registrations serve to place Defendants on constructive

notice of Brookfield's rights in the MANHATTAN WEST and MW marks.  *See* 15 U.S.C. §

1072.

**B.     Defendants' Wrongful Activities**

13.     According to their website, Defendants offer hotel services under the name

MANHATTAN WEST HOTEL, in a building located at the corner of 30th Street and 8th

Avenue in New York City, only two city blocks from the site of Brookfield's MANHATTAN

WEST development.

14.     In operating their hotel, Defendants have without authorization adopted

Brookfield's MANHATTAN WEST trademark.  Moreover, as shown below, Defendants also

use a stylized MW mark, placed in the same location and manner as is used by Brookfield:



15.     In connection with this endeavor, Defendants are also using the MANHATTAN WEST mark in connection with the domain name for their website, namely *www.manhattanwesthotel.com*.

16.     Defendants are not associated or affiliated with Brookfield and have never been authorized or otherwise licensed to use the MANHATTAN WEST or MW marks in connection with the sale or offering for sale of any goods or services.

17.     The goods and services Defendants offer under the MANHATTAN WEST HOTEL mark are not provided or approved by Brookfield.

18.     Defendants' use of MANHATTAN WEST HOTEL began several years after Brookfield first began using its marks in connection with commercial real estate, including the planned development of a hotel, and after those marks became associated exclusively with Brookfield.

19.     As a matter of law, Defendants were on constructive notice of Brookfield's rights in the MANHATTAN WEST and MW marks based on Plaintiff's registrations therefore.

20.     Furthermore, Defendants have been on actual notice since at least December 2014, when Brookfield first contacted them by means of a letter from its counsel, that their ongoing use of MANHATTAN WEST HOTEL violated Brookfield's trademark rights. Defendants ignored Plaintiff's overture, however, and continued to willfully infringe Plaintiff's marks.

21.     The addition of "HOTEL" to Defendants' company's name does nothing to dispel confusion, as it has led and will lead consumers of Defendants' products and services to believe, mistakenly, that Defendants' MANHATTAN WEST HOTEL is a joint venture between

Brookfield and Defendants, or that Defendants' company is in fact the hotel slated to be built as part of Brookfield's Manhattan West development.  This marketplace confusion is particularly likely given that the link between Brookfield properties and hotels was recently widely publicized due to extensive media coverage of Brookfield's 2014 acquisition of Thayer Lodging Group, a private-equity firm that specializes in hotel investments.

22.     Accordingly, Defendants' unauthorized use of the MANHATTAN WEST HOTEL mark and MW design is with a deliberate intent to trade on the goodwill of Plaintiff's MANHATTAN WEST and MW marks and with the deliberate intent to create a false impression as to the source or sponsorship of Defendants' services.  The goodwill that Brookfield has built up in its brand through years of substantial investment and effort is put at risk by virtue of Defendants' misappropriation of the MANHATTAN WEST mark to sell and advertise their own services.

23.     As a result of Defendants' use of the MANHATTAN WEST and MW marks or confusingly similar variations thereof, Brookfield is being irreparably harmed by the existence, marketing, promotion, offering for sale, and sale of Defendants' services.

24.     Defendants' acts are likely to injure Brookfield's goodwill and reputation.  The use by Defendants of Brookfield's MANHATTAN WEST and MW marks unfairly and unlawfully wrests from Brookfield control over its valuable trademarks and reputation. Brookfield has no control over the quality of Defendants' services.  As a result, Brookfield's extremely valuable reputation is put in jeopardy and may be permanently damaged.  This risk to Brookfield's reputation has the potential to be particularly damaging now, as Brookfield remains in the process of securing tenants for its new property.  Its reputation is crucial to the success of

that ongoing endeavor, and therefore to its ability to recoup its substantial investment in the development of Manhattan West and ultimately to render the project profitable.

26.    Thus, Defendants' unauthorized acts as described herein have caused and will continue to cause irreparable damage to Brookfield's business and goodwill unless restrained by this Court.

### FIRST CLAIM FOR RELIEF:
### FEDERAL TRADEMARK INFRINGEMENT (15 U.S.C. § 1114(1))

26.    Plaintiff repeats and realleges the allegations set forth in Paragraphs 1 through 25 as if fully set forth herein.

27.    Defendants' offering, advertising and providing of hotel services under the MANHATTAN WEST HOTEL mark and MW design is likely to cause confusion, mistake or deception as to the source or sponsorship of Defendants' goods and services.

28.    As a result of Defendants' unauthorized use of Brookfield's federally registered MANHATTAN WEST and MW marks, consumers are likely to believe that Defendants' hotel services have been approved by or are otherwise associated with Brookfield.

29.    Such use falsely represents Defendants as being legitimately connected with and/or authorized by Brookfield and places beyond Brookfield's control its own reputation and ability to control the use of the MANHATTAN WEST and MW marks or the quality of the services bearing those marks.

30.    Defendants' infringement of Brookfield's registered marks is willful, intended to reap the benefit of the goodwill of Brookfield, and violates Section 32(1) of the Lanham Act, 15 U.S.C. § 1114(1).

31.     Defendants' aforesaid conduct is causing irreparable injury to Brookfield and to its goodwill and reputation, and will continue both to damage Brookfield and deceive and threaten harm to the public unless permanently enjoined by this Court.

32.     Brookfield has no adequate remedy at law.

**SECOND CLAIM FOR RELIEF:**
**<u>FEDERAL UNFAIR COMPETITION (15 U.S.C. § 1125(a))</u>**

33.     Plaintiff repeats and realleges the allegations set forth in paragraphs 1 through 32 above as if fully set forth herein.

34.     Defendants' use of MANHATTAN WEST HOTEL and the MW design for services that are identical, related and/or substantially similar to those offered by Brookfield under its MANHATTAN WEST and MW marks constitutes a false designation of origin and a false representation as to the origin of Defendants' services.  Defendants' use of MANHATTAN WEST HOTEL and the MW design in connection with their hotel services is likely to cause confusion, mistake, or deception as to the source of Defendants' services and is likely to create the false impression that those goods and services are authorized, sponsored, endorsed, licensed by, or affiliated with Brookfield.

35.     Defendants' conduct is willful, intended to reap the benefit of the goodwill of Brookfield, and violates Section 43(a)(1)(A) of the Lanham Act, 15 U.S.C. § 1125(a)(1)(A).

36.     Defendants' conduct has caused and is causing irreparable injury to Brookfield and will continue both to damage Brookfield and deceive the public unless enjoined by this Court.

37.     Brookfield has no adequate remedy at law.

**THIRD CLAIM FOR RELIEF:**
**TRADEMARK INFRINGEMENT AND**
**UNFAIR COMPETITION UNDER NEW YORK COMMON LAW**

38.     Plaintiff repeats and realleges the allegations set forth in paragraphs 1 through 37 above as if fully set forth herein.

39.     Defendants' use of MANHATTAN WEST HOTEL and the MW design in connection with their hotel services is likely to confuse the public as to the origin, source or sponsorship of Defendants' services, or to cause mistake or to deceive the public into believing that Defendants' services are authorized, sponsored, endorsed, licensed by, or affiliated with Brookfield, in violation of Brookfield's rights in the MANHATTAN WEST and MW marks under the common law of the State of New York.

40.     Upon information and belief, Defendants chose MANHATTAN WEST HOTEL with full knowledge of Brookfield's prior use of and rights in MANHATTAN WEST and MW. By adopting and using a colorable imitation of Brookfield's MANHATTAN WEST and MW marks, Defendants have been unjustly enriched and Brookfield has been damaged.

41.     By misappropriating and trading upon the goodwill and business reputation represented by Brookfield's MANHATTAN WEST and MW marks, Defendants have been and, unless enjoined by this Court, will continue to be unjustly enriched at Brookfield's expense.

42.     Defendants' conduct constitutes unfair competition and trademark infringement under the common law of the State of New York.

43.     Defendants' conduct has caused and is causing irreparable injury to Brookfield and will continue to both damage Brookfield and deceive the public unless enjoined by this Court.

44.     Brookfield has no adequate remedy at law.

**FOURTH CLAIM FOR RELIEF:**
**DILUTION UNDER NEW YORK LAW (N.Y. General Business Law § 360-*l*)**

45.     Plaintiff repeats and realleges paragraphs 1 through 44 above as if fully set forth herein.

46.     As a result of Brookfield's extensive use and promotion of the MANHATTAN WEST and MW marks and the services offered thereunder, the MANHATTAN WEST and MW marks are highly distinctive of Brookfield's services and are widely recognized among the consuming public as a designation of source of Brookfield's services.  The MANHATTAN WEST and MW marks were distinctive and widely known before Defendants commenced their unauthorized use of the MANHATTAN WEST HOTEL trade name as described herein.

47.     Defendants' commercial use of the MANHATTAN WEST HOTEL mark is diluting Plaintiff's marks by impairing the distinctiveness of the MANHATTAN WEST and MW marks, thereby lessening the capacity of those marks to identify and distinguish Plaintiff exclusively, in violation of Section 360-*l* of the General Business Law of the State of New York.

48.     Defendants' conduct has caused and is causing immediate and irreparable injury to Plaintiff and will continue to both damage Plaintiff and to deceive the public unless enjoined by this Court.

49.      Brookfield has no adequate remedy at law.

*        *        *

**WHEREFORE**, Plaintiff respectfully demands judgment as follows:

**1)**     That a permanent injunction be issued enjoining Defendants jointly and severally, and any of their officers, agents, privies, shareholders, principals, directors, licensees, attorneys, servants, employees, affiliates, subsidiaries, successors and assigns, and all those persons in concert or participation with any of them, and any entity owned or controlled in whole or in part

by any of the Defendants, in any jurisdiction in which they operate, from:

(a)     imitating, copying or making unauthorized use of the MANHATTAN WEST or MW marks, or any simulation, reproduction, copy, colorable imitation or confusingly similar variation thereof, including but not limited to MANHATTAN WEST HOTEL and Defendants' MW design (any such mark, a "Prohibited Mark"), in or as part of any corporate name, trademark, service mark, domain name, trade name, business name, fictitious name, or otherwise presenting any name that includes in whole or in part a Prohibited Mark on or in connection with any goods, businesses or services offered by Defendants or the advertising or promotion thereof;

(b)     using a Prohibited Mark to refer to or describe any products, goods or services offered by or on behalf of Defendants or any individual, entity or other third party affiliated with Defendants;

(c)     using a Prohibited Mark in or as part of any domain name, keyword, metatag, source code or other Internet search term, or otherwise using a Prohibited Mark on or in connection with any website owned or controlled by Defendants;

(d)     applying to register or registering in the United States Patent and Trademark Office, or in any state trademark registry, any Prohibited Mark;

(e)     using a Prohibited Mark in connection with the promotion, advertisement, sale, offering for sale or the provision of any goods or services;

(f)     engaging in any other activity constituting unfair competition with Plaintiff or constituting an infringement of Plaintiff's MANHATTAN WEST or MW marks; or

(g)     instructing, assisting, aiding or abetting any other person or entity in engaging in or performing any of the activities referred to in subparagraphs (a) through (f) above.

**2)**      Directing that Defendants deliver up to Plaintiff's attorneys for destruction all goods, labels, tags, signs, stationery, prints, packages, promotional and marketing materials, advertisements and other materials currently in their possession or under their control, incorporating, featuring or bearing any Prohibited Mark.

**3)**      Directing that Defendants disable and transfer to Brookfield the *manhattanwesthotel.com* domain name.

**4)**      Directing such other relief as the Court may deem appropriate to prevent the public from deriving the erroneous impression that any service offered or promoted by Defendants within the United States is authorized by Plaintiff or related in any way to Plaintiff or that Defendants are otherwise affiliated with Plaintiff.

**5)**      Directing that Defendants file with the Court and serve upon Plaintiff's counsel within thirty (30) days after entry of judgment a report in writing under oath, setting forth in detail the manner and form in which they have complied with the above.

**6)**      Awarding Plaintiff such damages it has sustained or will sustain by reason of Defendants' acts of trademark infringement and unfair competition.

**7)**      Awarding Plaintiff all gains, profits, property and advantages derived by Defendants from their unlawful conduct and, pursuant to 15 U.S.C. § 1117, awarding Plaintiff an amount up to three times the amount of actual damages sustained as a result of Defendants' violation of the Lanham Act.

**8)**      Awarding to Plaintiff exemplary and punitive damages to deter any further willful trademark infringement as the Court finds appropriate.

**9)**      Awarding to Plaintiff its costs and disbursements incurred in this action, including reasonable attorneys' fees.

10)      Awarding to Plaintiff interest, including pre-judgment interest on the foregoing

sums.

11)      Awarding to Plaintiff such other and further relief as the Court may deem just and

proper.

## JURY TRIAL DEMAND

Plaintiff demands a jury trial in this action.

Dated:  March 11, 2016                    Respectfully submitted,
        New York, NY

                                          FROSS ZELNICK LEHRMAN & ZISSU, P.C.

                                          By: _____
                                             James D. Weinberger (jweinberger@fzlz.com)
                                             Felicity Kohn (fkohn@fzlz.com)
                                          866 United Nations Plaza
                                          New York, New York 10017
                                          (212) 813-5900

                                          *Counsel for Plaintiff Brookfield Office Properties Inc.*

EXHIBIT A

# Expansion of big West Side project gets nod



*A plan for an open-space pedestrian link between Brookfield Office Property's 5.4 million-square-foot development west of Penn Station with the 1.8 million-square-foot office building it purchased recently wins City Planning Commission approval.*

By Joe Anuta

March 20, 2014 11:21 a.m.

The City Planning Commission approved a key zoning modification for Brookfield Office Properties' $4.5 billion Manhattan West project Wednesday. The change will allow it to be linked up with the huge building the company bought just to the west in 2012. The proposal now moves on to the City Council for consideration.

"We are pleased with the commission's decision, and look forward to moving ahead with the project," said Philip Wharton, senior vice president of development at the firm. "We believe the additional open space will be beneficial to the community."

Brookfield had its requested zoning modifications approved years ago, before the financial downturn, for most of the 5-acre complex between Ninth and Tenth avenues and West 31st and West 33rd streets, but after acquiring the hulking 16-story, concrete-clad building at 450 W. 33rd St., the firm decided to return to the City Planning Commission to deck over Dyre Avenue and provide a pedestrian walkway inking that building with the company's new development. Along with other modifications to public plazas, the deck will bring the public open space to a total of more than two acres, about double what the previous plan contained. All told, Manhattan West is set to include 7 million square feet of office, retail, residential and hotel uses.

Brookfield broke ground on the project in late 2012, and is currently building the platform for it over the tracks leading out of Penn Station to the west through the Long Island Railroad Yards. Last month, the firm also kicked off renovations at 450 W. 33rd St., designed to improve its brutalist aesthetic by sheathing it in pleated glass.

Manhattan West sits a block from an even bigger planned complex, the 28-acre Hudson Yards development, where Related Cos. began construction Wednesday on a portion of the enormous platform it will build over the yards.

# Brookfield director fills tall orders for retai

## Crain's: Brookfield director fills tall orders for retail



By Daniel Geiger
June 3, 2014 1:00 p.m.



*Edward Hogan, the director of retail leasing at Brookfield Properties, looks to his complement his neighbors near Brookfield Place and Manhattan West. Photo: Brookfield Properties*

Edward Hogan, the director of retail leasing at Brookfield Properties, faced an imposing challenge when the company decided to upgrade the 250,000 square feet of retail space at its sprawling office complex, Brookfield Place.

Just across the street at the World Trade Center, 400,000 square feet of gleaming new retail space is being readied. Instead of looking at that neighbor as a competitor, Mr. Hogan executed a plan to transform Brookfield's mall into a complementary offering, populating it with exclusive luxury retailers like Hermès and Ferragamo and a new French market, Le District.

"Our goal was to create a project that was different but that would also benefit from what they're creating," Mr. Hogan said. The $200 million project will be finished next year.

Now Mr. Hogan is planning to do it again at Manhattan West, a 7 million-square-foot, multibillion-dollar mixed-use complex that the company plans to begin building in the Hudson Yards neighborhood west of Penn Station at the end of the year. That project will have about 200,000 square feet of brand-new retail that Mr. Hogan has just started to lease. There again, Mr. Hogan has to curate a space that will need to

carve its own niche next to a larger neighbor. The Related Cos. is in the process of erecting a 1 million-square-foot mall at its huge development over the rail yards, one of the largest retail spaces in the city. Mr. Hogan sees enough room for both projects.

"This is going to be one of the densest neighborhoods in the city," he said. "It's going to need a lot of retail."

The creativity of developing new shopping destinations like Manhattan West and Brookfield Place is what drew Mr. Hogan to leasing. A youthful-looking 48, Mr. Hogan has been with Brookfield for 18 years, but before that he was an architect.

"Architecture was more of a service industry. You're not making the decisions and designing it; someone is often telling you what to do, and it was much less creative than I thought," Mr. Hogan said. "No one can envision the project better than the one who's developing it, and being part of that team now, I'm part of painting that picture."

# 'Manhattan West' Development Project Taking Shape on West Side



July 22, 2014 6:31 PM

[To view the video clip, click here.](#)

They're building big on the Big Apple's West Side as a new platform is set to cover train tracks, and support a $5 billion development project in the area.

As CBS 2's Tony Aiello reported, it's the hole just west of Ninth Avenue, a block from Penn Station, that provides a glimpse of sunlight for trains coming from or bound for New Jersey.



*"Manhattan West" Construction just west of Ninth Avenue (Credit: CBS 2)*

But the sky view is slowly disappearing under a canopy of concrete as a mega platform meant to support a massive development called "Manhattan West" progresses.

"It's amazing because this is really creating new land where none existed before, and this whole neighborhood is Manhattan's new frontier," said Melissa Coley, with Brookfield Office Properties.

The price tag for the platform over the tracks is $330 million, Aiello reported.

The concrete segments that make up the platform are absolutely massive — each one weighs 56 tons. They're made in Trenton, New Jersey and trucked to the site right over the George Washington Bridge

one segment at a time because that's all the weight that the bridge can handle, Aiello reported.



*Artist rendering of public space as part of "Manhattan West" development project (Credit: CBS 2)*

Each segment has holes where massive cables will thread them together like beads on string. Sixteen segments are assembled to make a single span, compressed together by tension on the cables.

And believe it or not, gallons of super epoxy hold together the seems where the segments meet, Aiello reported.

"When they've all been assembled together, the entire span weighs 2,400 tons, which is about 187 MTA buses!" Henry Caso said.
And that's where a $7 million beast called "The Launcher" comes in, Aiello reported. It lifts each massive span and positions it into place — mostly at night when traffic is sparse.



*Artist rendering of building as part of "Manhattan West" development project (Credit: CBS 2)*

By the end of the year, 39 spans will cover the tracks so construction can commence on office and residential towers, a hotel, and two acres of public space.

"It's an amazing regeneration of a neighborhood," Coley said.

Across Tenth Avenue from Manhattan West, another platform will cover the Hudson Yards for an even larger development. Together the two complexes will have 17 high-rise buildings with 22 million-square-feet of space.

# Reimagining a Brookfield Behemoth on the Far West Side

# THE COMMERCIAL OBSERVER

**BY LIAM LA GUERRE OCT. 21, 2015, 9 A.M.**



**JOSHUA PRINCE RAMUS OF REX ARCHITECTURE STANDS IN FRONT OF 450 WEST 33RD STREET (PHOTO: YVONNE ALBINOWSKI/ FOR COMMERCIAL OBSERVER).**

When Brookfield Property Partners was studying how to revitalize the Winter Garden atrium at the World Financial Center (now called Brookfield Place) in 2011, its executives reached out to various design-related firms, including an architecture company that had never completed a project in New York City called REX.

Brookfield just wanted to gather ideas, they said, as plans for a $250 million revitalization of the entire World Financial Center campus were already unveiled that year by Pelli Clarke Pelli Architects, whose founder César Pelli originally designed the center. REX founder and Principal Joshua Prince-Ramus still saw it as an opportunity to create a solution for a space that had trouble attracting patrons to its second-floor retail and dining area. He designed a "floating platform" for the atrium that would serve as an event space on the second floor.

"His concept was amazing. It was clearly the favorite," Sabrina Kanner, an executive vice president at Brookfield, told Commercial Observer. "We were incredibly impressed not only with the result but also with his process. He thought about it very clearly and intellectually. But as intellectual and articulate as he is, his designs were very beautiful."



**REX'S "FLOATING PLATFORM" DESIGN FOR THE WINTER GARDEN ATRIUM (RENDERING: LUXIGON).**

Brookfield didn't wind up using REX's plans. But clearly Mr. Prince-Ramus had struck a chord. A few months later, Ms. Kanner called Mr. Prince-Ramus to explain that they wanted him to reimagine the concrete pyramid-shaped 450 West 33rd Street between Ninth and 10th Avenues—a building that even Brookfield didn't feel any tenderness toward.

"I used to say it was the ugliest building in Manhattan, and then we bought it," Ms. Kanner said. "We thought of Joshua, because we really needed out-of-the-box thinking for it—someone who didn't color in the lines."

It wouldn't have been cost-effective to demolish the sprawling 1.8-million-square-foot, block-long concrete building since it sits above Hudson Yards train tracks, so instead Brookfield planned to transform it and integrate the property into its $4.5 billion Manhattan West development, a 7-million-square-foot multi-use mega-complex designed by architecture giant Skidmore, Owings & Merrill, a.k.a. SOM. The full project will include two new glassy skyscrapers: a 67-story Class A office building called 1 Manhattan West and a 62-floor luxury residential condominium tower.

Mr. Prince-Ramus designed the $200 million renovation of the 16-story 450 West 33rd Street (now known as 5 Manhattan West), which many agree finally makes the building shine—literally and figuratively—converting its shell from concrete to glass.

While many well-known tenants have occupied space in the building over the course of its nearly half-century history, including the New York Daily News, Sky Rink (now a part of Chelsea Piers) and the Associated Press (which is vacating for a Brookfield-owned property Downtown, as CO previously reported) for the latter part of its existence, the 1969 building has been ridiculed after misguided updates transformed it from an example of 1960s Brutalist architecture to essentially a mishmash of ideas.

Decades after being built, 450 West 33rd Street—originally designed by Davis, Brody & Associates (now Davis Brody Bond)—went in for a half-baked renovation; it was repainted beige from its original exposed concrete color, and metallic siding was added to cover some walls. The lobby was transformed into a postmodernist style, which didn't match the building's exterior.

"It just made it horrible," Mr. Prince-Ramus said. "I think anyone would admit, regardless of its roots, that it was an eyesore." (A representative of Davis Brody Bond did not return requests for comment.)



**THE PLEATED GLASS DESIGN OF 5 MANHATTAN WEST (RENDERING: REX).**

Besides the aesthetic issues, Mr. Prince-Ramus had to solve the building's energy problems, created by the heavy slabs of concrete panels that make up its exterior. While all-glass buildings aren't the most energy efficient, Mr. Prince-Ramus' design compensates for that with a pleated design. The over-slung panes of glass are slightly darkened so it self-shades from direct sunlight with the sloped sides, reducing energy consumption while still allowing natural light into the building.

"I think what he did with that building is nothing short of remarkable," said Gary Haney, a design partner at SOM, who oversaw the Manhattan West master plan. "It was one of the most reviled and ugly buildings in Manhattan. That skin that sort of folds and cascades is really genius."

Construction is occurring with tenants still occupying the property; as concrete panels come down, temporary walls are put up. Completion is expected next year.

"There is some inconvenience to the occupants," Mr. Prince-Ramus said. "They have to pull their furniture in from the exterior. And no matter how we make these temporary walls, it's difficult to pull off the concrete panels without making a sound."

But that hasn't deterred new tenants from signing leases at the property. Along with the promise of its

new glassy exterior, the large floor plates of the building (which have a maximum of 140,000 square feet on some floors) and its old industrial ceiling heights that are typically about 16 feet high have been attractive to technology, advertising, media and information technology, or TAMI, tenants.

> "We thought of Joshua, because we really needed out-of-the-box thinking for it—someone who didn't color in the lines. "—Sabrina Kanner

Last year, J.P. Morgan Chase signed a lease for 123,000 square feet on the ninth floor of the building for its digital operations. Advertising firm R/GA also took a lease last year for 173,000 square feet and moved into the space, which comprises the entire 12th floor and part of the 11th floor. And in March, London-based financial data company Markit signed a lease for the entire 140,000-square-foot fifth floor. Asking rents in the building are around $80 per square foot for office space.

"What attracted Markit to the building and what has been vocalized to the real estate community was just a transformation of the building from a building that was just invisible to one that really shines," said Daniel Horowitz of Savills Studley, who represented Markit in the transaction with colleague Jeffrey Peck. "The interior of the floor plate is going to be flooded with light and that is very important for buildings that have floor plate sizes like 5 Manhattan West."

**SEATTLE PUBLIC LIBRARY'S CENTRAL LIBRARY (PHOTO: RAMON PRATT).**
A native of Seattle, Mr. Prince-Ramus, 46, is a divorced dad who lives in Tribeca with his 10-year-old daughter. He studied philosophy at Yale University and holds a master's degree in architecture from Harvard University. Perhaps it's because of his philosophy background that when it comes to architecture he works to solve problems first and think about the aesthetic later.

He is probably best known for his designs of the Dee and Charles Wyly Theatre in Dallas and the nearly $170 million Seattle Public Library Central Library. The former is an 80,000-square-foot building that features a glass-walled, 575-seat multi-form theater built with flexibility in mind. The theater can transform into a variety of configurations, including proscenium, studio, arena, thrust and a flat surface. The latter is an abstract, blocky, 11-story, 412,000-square-foot building with a full glassy exterior, interwoven with a special metal in a crisscrossing design that makes it opaque to sunlight, but transparent from the inside.

If it looks like various sizes of blocks were piled together in the library's design, that's because they were. Mr. Prince-Ramus crafted the levels of the library with sections that cater to different media types, transforming the former library from a generic building dedicated to books to one more adjustable to modern media types. In the largest area, Mr. Prince-Ramus designed what looks like a four-level parking garage spiral for the books.

Mr. Prince-Ramus has been a visiting professor at Harvard, Columbia University, Yale and the Massachusetts Institute of Technology (MIT). In 2011, the Huffington Post designated Mr. Prince-Ramus

as one of the five best architects under 50 years old.



**THE MANHATTAN WEST SITE PLAN (IMAGE: REX).**

The redesign of 450 West 33rd Street will bring the building into the fold of Brookfield's larger vision for Manhattan West. A public plaza will be created at the development to connect the new towers to the second floor east facade of the building, where retail will be added. Also, connecting to that public plaza is a new breezeway that will be built on the second floor on the West 31st Street side near 10th Avenue with stairs leading to street level. It creates access for pedestrians to walk directly through the block and the Manhattan West campus and is about a block from the High Line, serving as a sort of extension. Mr. Prince-Ramus also redesigned the lobby of the building with a modern, sleek look to match its exterior. Although it is an adaptive reuse project that will blend into the modern complex, Mr. Prince-Ramus hopes people don't classify it that way.

"What would make me proudest would be if when the project is completed, hopefully they'll just say it's a really great building and hopefully they wouldn't say that it's a great adaptive reuse," he said.

# Brookfield Sells Stake in Manhattan West Development to Qatar Fund

# THE WALL STREET JOURNAL.

By CHELSEY DULANEY

Oct. 28, 2015 2:46 p.m. ET

## Five-building development will include office towers, luxury residential building and a hotel

Brookfield Property Partners LP said Wednesday it has sold a 44% stake in its Manhattan West mixed-use development in New York City to Qatar's state investment fund.

Brookfield estimated the five-building development, bordered by 31st and 33rd Streets and 9th and 10th Avenues, will be valued at $8.6 billion once completed. The long-awaited development is slated to include office towers, a luxury residential building and a hotel.

Brookfield Property Partners' predecessor, Canadian developer Olympia & York, bought the land above a set of submerged rail tracks on a grungy block on Manhattan's West Side in the mid-1980s, hoping one day to build a giant office complex on top.

Brookfield has been moving ahead with an early phase of the development, a two million-square-foot office tower called 1 Manhattan West.

The venture expands the relationship between Brookfield and Qatar Investment Authority, the investment vehicle founded by Qatar in 2005.

This year, Qatar Investment Authority and Brookfield have moved to complete the takeover of London's Canary Wharf's majority shareholder, Songbird Estates PLC. In an interview with The Wall Street Journal earlier this year, Brookfield Chief Executive Ric Clark indicated that the venture plans to develop aggressively Canary Wharf's 30 acres of vacant land.

Brookfield's New York Stock Exchange-listed shares added 1.7% to $23.78 a share in early afternoon trading after an earlier halt.

# Daniel Doctoroff Takes His Business to Hudson Yards

Photo



Credit

Advertisement

Select minimum priceSelect maximum price

Daniel L. Doctoroff, the powerful former deputy mayor who pushed to add glittering offices and apartments to industrial areas in New York, giving much of the skyline its current look, is moving to a neighborhood of his making.

This week, Mr. Doctoroff is expected to complete a deal to relocate his technology firm, Sidewalk Labs, to Hudson Yards, the enclave on Manhattan's West Side where skyscrapers, shops and parks are being built above railroad tracks.

For Mr. Doctoroff, who served in the Bloomberg administration, the move may seem like vindication. For more than a decade, he championed the construction of a football stadium in the area, to help lure the Olympic Games to New York. But despite spending years on the effort, and millions of dollars of his personal fortune, the former investment banker watched as controversy engulfed the stadium plan, before it was defeated by state officials. The 2012 Olympics ended up taking place in London.

Still, zoning changes that accompanied the proposal paved the way for the current wave of development, a top-to-bottom transformation that Mr. Doctoroff said was ultimately his goal.

"I don't want to be immodest, but I do take a lot of pleasure and pride in what the Olympics catalyzed," said Mr. Doctoroff, who added that he came up with the idea of naming the neighborhood Hudson Yards. "For me, it's a little bit like coming home."

Under the deal, Sidewalk Labs, where Mr. Doctoroff is chief executive, will take 67,000 square feet across a floor and a half at 10 Hudson Yards, an office tower being developed by the Related Companies and the Oxford Properties Group.

Mr. Doctoroff said he considered about 200 potential locations in Manhattan for Sidewalk, a tech firm focused on urban quality-of-life issues whose parent company is Alphabet, the holding company for Google. Sidewalk is now based in Lower Manhattan, in the Woolworth Building.

Joining Sidewalk at 10 Hudson Yards, in a space whose floor-to-ceiling windows provide striking views in four directions, will be Intersection, a tech firm that Sidewalk and other investors acquired last year. In a complicated play, Intersection was created from the merger of the Control Group and Titan, companies that were behind the creation of LinkNYC, the program now installing Wi-Fi kiosks on city sidewalks.

Advertisement

In several ways, Mr. Doctoroff's new digs can seem a homage to his past. Their design, by the firm Design Republic, will recall the look of the Bloomberg-era City Hall, where employees of all titles mixed in an open-floor layout, he said. Likewise, Sidewalk and Intersection employees will sit side by side, he added.

Advertisement

"You will walk in, and it will feel like it is one company," Mr. Doctoroff said. "We will try to create a feeling of being very forward-looking without appearing to be immature."

Scheduled to open in August, Sidewalk's new offices will be leased under a 10-year contract with Related, according to Related officials. When the lease is up, Coach, the luxury fashion house whose headquarters will also be at 10 Hudson Yards, will have the option to lease Sidewalk's two floors, if the company wants to expand, a Coach spokeswoman said.

Coach, which also owns a stake in the building and has its own lobby there, will arrive in April, the spokeswoman said.

Neither Related nor Sidewalk would disclose the financial terms of Sidewalk's deal. But real estate brokers who work in the area say that tenants at 10 Hudson Yards are paying about $70 to $80 a square foot.

Mr. Doctoroff's lease represents the close of a chapter. With it, Related said, 10 Hudson Yards, which broke ground in 2012 as the first major new office tower in the neighborhood, is now fully occupied, with

tenants like SAP, the software company; BCG, the consulting firm; and L'Oréal, the cosmetics company. But getting there took a while.

Most of the neighborhood was rezoned more than a decade ago, in 2005, and development was slow to take root, even when considering the effects of the recession. Despite progress since, walled-off sidewalks add to a work-in-progress vibe, and there are more cranes in the air than towers.

Though the actual rezoned area covers about 45 blocks, which historically included a mix of tunnel ramps, stables and apartments, Related controls the bulk of the neighborhood, or a 28-acre parcel, most of which is over train tracks.

A second office tower, 30 Hudson Yards, a commercial condo from Related and Oxford, is also 100 percent spoken for, officials say, by owners like Wells Fargo Securities, Time Warner and KKR, the private equity company. It is scheduled to open in 2019. Construction has also begun on 35 Hudson Yards, a hotel and office building, and 15 Hudson Yards, a residential tower with condos and rentals. Related is expected to complete its portion in 2024.

Photo



Credit

"People thought we were nuts, but we believed in what we were doing," said Stephen M. Ross, the

chairman and founder of Related, which is itself relocating to the area. In 2019, it will move to 30 Hudson Yards, in a nine-floor, 250,000-square-foot berth, from the Time Warner Center in Midtown. "I think the vision we have for Hudson Yards is that this will become the new heart of New York City," Mr. Ross added.

Advertisement

While Related's expansive project is in many ways the area's centerpiece, it's hardly alone.

Also taking shape is Manhattan West, a five-acre, seven-million-square-foot mixed-use complex from Brookfield Property Partners that is suspended over tracks as well. Its first tower, a 62-story rental with 844 apartments, will open in 2017.

Often using the Olympics as a tool, Mr. Doctoroff played a major role in reinventing neighborhoods. From 2002 to 2008, he served as the city's deputy mayor of economic development and rebuilding, focusing on factory districts like the waterfront in Williamsburg in Brooklyn. It was initially considered for Olympic volleyball competitions, and it is lined with luxury condos today. Hunter's Point South in Queens, which was designated for athlete housing, is now adding the affordable kind.

But at Hudson Yards, Mr. Doctoroff's plan for a stadium, which would have hosted track and field events and also have been home to the New York Jets football team, ran into considerable opposition. Some critics were worried about game-day traffic, while others were unhappy that public money would go to a facility used only sporadically. Under pressure, the state's Public Authorities Control Board denied the plan in 2005.

Along the way, Mr. Doctoroff attracted his share of critics, who say his pro-development policies worsened the city's rich-poor divide.

Ron Shiffman, an urban planner who served on the city's Planning Commission, said that eliminating industrial zones hurt start-ups involved with manufacturing. Offices for white-collar workers and shops selling luxury goods won't benefit the middle class, Mr. Shiffman added.

"I wouldn't say he was a malevolent individual, far from it," Mr. Shiffman said of Mr. Doctoroff. "I just don't think he was sensitive enough or had experience enough with what was happening in other parts of the city."

While it may take years for the neighborhood to fulfill its promise of tens of millions of square feet of office space, millions of square feet of hotels and stores, and tens of thousands of new apartments, the city could reap rewards sooner, Mr. Doctoroff said.

Indeed, based solely on buildings that are finished, will be soon or are in the planning stages, Hudson Yards could generate $30 billion in tax revenue over the next three decades, Mr. Doctoroff said, adding

in ever-optimistic terms, that "the West Side is New York's future."

A version of this article appears in print on January 27, 2016, on page B3 of the New York edition with the headline: A Familiar Face at Hudson Yards. Order Reprints | Today's Paper | Subscribe

# Brookfield to Start Manhattan Tower After Signing Skadden

**Bloomberg**Business

*by David M Levitt*



*Manhattan West will be an "entirely new neighborhood" that will "redefine the west midtown skyline,"
Dennis Friedrich, chief executive officer of Brookfield's office division, said in the statement.
Photographer: Michael Nagle/Bloomberg*

Brookfield Property Partners LP said it will start building its 1 Manhattan West office tower, after signing a
lease with the law firm Skadden, Arps, Slate, Meagher & Flom LLP for about a quarter of the skyscraper.

The agreement, announced Tuesday in a statement by New York-based Brookfield, jump-starts office
construction at the 7 million-square-foot (650,000-square-meter) Manhattan West project, part of an
effort to draw the Midtown business district west toward toward the Hudson River. It's another step in the
plan to remake the once-industrial Hudson Yards area into a neighborhood for housing and commerce,
with office tenants including Coach Inc. and Time Warner Inc. and stores such as the city's first Neiman
Marcus.

Case 1:16-cv-01854-VM   Document 1   Filed 03/11/16

The Skadden law firm agreed to a 20-year lease for 550,000 square feet on floors 28 to 43 of the 67-story tower.

Manhattan West will be an "entirely new neighborhood" that will "redefine the west midtown skyline," Dennis Friedrich, chief executive officer of Brookfield's office division, said in the statement. "When this building opens in 2019, it will be home to Skadden and other exceptional companies from New York and around the world."

This marks the second time in less than two decades that Skadden will be a pioneering tenant in a new Manhattan office neighborhood. In the late 1990s, the firm moved into 4 Times Square, becoming an anchor tenant along with magazine publisher Conde Nast. Skadden currently occupies about 826,000 square feet in that building, under a lease that expires in 2020, according to data complied by Bloomberg. The developer, Durst Organization, has no office commitments in the tower beyond that year. Conde Nast relocated its headquarters to 1 World Trade Center in lower Manhattan.

Durst is also equity partner in 1 World Trade Center with the Port Authority of New York and New Jersey.

EXHIBIT B

# United States of America

## United States Patent and Trademark Office

# MANHATTAN WEST

**Reg. No. 4,706,150**

**Registered Mar. 24, 2015**

**Int. Cls.: 36 and 37**

**SERVICE MARK**

**PRINCIPAL REGISTER**

BROOKFIELD OFFICE PROPERTIES INC. (CANADA CORPORATION)
SUITE 330
BROOKFIELD PLACE, 181 BAY STREET
TORONTO, ONTARIO, CANADA M5J2T3

FOR: PROPERTY MANAGEMENT SERVICES; REAL ESTATE MANAGEMENT SERVICES; REAL ESTATE LEASING SERVICES FOR COMMERCIAL, RETAIL AND RESIDENTIAL PROPERTIES; REAL ESTATE BROKERAGE SERVICES; REAL ESTATE INVESTMENT; REAL ESTATE MANAGEMENT AND REAL ESTATE INVESTMENT IN THE FIELD OF RESIDENTIAL, COMMERCIAL AND RETAIL REAL ESTATE, IN CLASS 36 (U.S. CLS. 100, 101 AND 102).

FIRST USE 1-31-2012; IN COMMERCE 1-31-2012.

FOR: REAL ESTATE DEVELOPMENT SERVICES; BUILDING CONSTRUCTION SERVICES; CONSTRUCTION PLANNING; BUILDING MAINTENANCE AND REPAIR; CUSTOM CONSTRUCTION AND BUILDING RENOVATION; REAL ESTATE DEVELOPMENT AND BUILDING CONSTRUCTION IN THE FIELD OF RESIDENTIAL, COMMERCIAL AND RETAIL REAL ESTATE; CONSTRUCTION CONSULTATION SERVICES, IN CLASS 37 (U.S. CLS. 100, 103 AND 106).

FIRST USE 1-31-2012; IN COMMERCE 1-31-2012.

THE MARK CONSISTS OF STANDARD CHARACTERS WITHOUT CLAIM TO ANY PARTICULAR FONT, STYLE, SIZE, OR COLOR.

NO CLAIM IS MADE TO THE EXCLUSIVE RIGHT TO USE "MANHATTAN", APART FROM THE MARK AS SHOWN.

SER. NO. 85-876,651, FILED 3-14-2013.

BRIAN CALLAGHAN, EXAMINING ATTORNEY

Director of the United States
Patent and Trademark Office

# United States of America
## United States Patent and Trademark Office



**Reg. No. 4,669,491**

**Registered Jan. 13, 2015**

**Int. Cls.: 36 and 37**

**SERVICE MARK**

**PRINCIPAL REGISTER**

BROOKFIELD OFFICE PROPERTIES INC. (CANADA CORPORATION)
SUITE 330
BROOKFIELD PLACE, 181 BAY STREET
TORONTO, ONTARIO, CANADA M5J2T3

FOR: PROPERTY MANAGEMENT SERVICES; REAL ESTATE MANAGEMENT SERVICES; REAL ESTATE LEASING SERVICES FOR COMMERCIAL, RETAIL AND RESIDENTIAL PROPERTIES; REAL ESTATE BROKERAGE SERVICES; REAL ESTATE MANAGEMENT IN THE FIELD OF RESIDENTIAL REAL ESTATE, IN CLASS 36 (U.S. CLS. 100, 101 AND 102).

FIRST USE 1-31-2012; IN COMMERCE 1-31-2012.

FOR: REAL ESTATE DEVELOPMENT SERVICES; BUILDING CONSTRUCTION SERVICES; CONSTRUCTION PLANNING; BUILDING MAINTENANCE AND REPAIR; CUSTOM CONSTRUCTION AND BUILDING RENOVATION; REAL ESTATE DEVELOPMENT AND BUILDING CONSTRUCTION IN THE FIELD OF RESIDENTIAL REAL ESTATE; CONSTRUCTION CONSULTATION SERVICES, IN CLASS 37 (U.S. CLS. 100, 103 AND 106).

FIRST USE 1-31-2012; IN COMMERCE 1-31-2012.

THE MARK CONSISTS OF STYLIZED "M" IN BLUE APPEARING OVERTOP OF A STYLIZED "W" IN LIGHT BLUE.

THE COLOR(S) BLUE AND LIGHT BLUE IS/ARE CLAIMED AS A FEATURE OF THE MARK.

SER. NO. 85-876,671, FILED 3-14-2013.

BRIAN CALLAGHAN, EXAMINING ATTORNEY



*Michelle K. Lee*

**Deputy Director of the United States
Patent and Trademark Office**